Witi-iebs, J.
delivered the opinion of the Court.
It will be convenient first to dispose of certain propositions *241 set forth in the grounds of appeal, which, in the judgment of this Court, do not enter into the true question raised by the t case. 1st. and 2d. It is suggested that the defendant was legal owner of the Tobacco, and therefore entitled to the money in question. This idea is based on the supposition, that he had a lien as factor, for a balance due to him by Swanson in that character. Besides the circumstance, that it nowhere appears that defendant acted in the capacity of fac* tor for Swanson, it is enough that the point was submitted to the jury in a form liable to no exception. The position taken by the Circuit Court was, that without possession, actual or constructive, a factor could have no lien; but if defendant established a balance due to him as factor, and also a possession, {of course actual or constructive.) he could retain for such balance. This question must be taken to have been resolved against him. The 5th ground complains that the declarations of Swanson were admitted in evidence for plaintiff, which touched the question of the legal right in the Tobacco. They did but touch it; for he made no affirmation of right; what he said concerning it was just that which should well proceed from the true owner of it, and he certainly treated it as his own up to the time of the transfer to Mitchell. It is enough for this point to say that every party to this litigation claimed by means of a right derived from Swanson, (voluntarily rendered by him, or wrested from him by the attachment law,) and since all of his declarations, heard on the trial, were such as were made before any right could have accrued to either party, it is not perceived wherefore they should be deemed objectionable.
We may approach, then, the only real question, which may be stated thus: Did Mitchell, the trustee, derive from Swanson (the owner of the Tobacco when he made the deed of Oct. 2d,) a good and legal title to it ? If Mitchell did, at that time, derive such title to the Tobacco, then the subsequent lien upon it aimed at by Smith, the defendant, through the operation of our attachment law,, was of course wholly unavailing.
Smith, the attaching creditor, attacks the trust-deed through the recording law of Virginia, and he affirms that it is void, by the terms of that law, because it was not placed on record in pursuance thereof.
The 11th and 12th sections of that law, printed with the report of this case, should be read in the outset of this inquiry, and read in connection. Here the effort will be made to state the substance. Such a deed as the one in question, it is declared, “ ought to be recordedand if recorded, this shall be done “ in the Court of that county or corporation in which such property shall remain.” If a trust-deed be thus recorded, or acknowledged, proved, and delivered for that pur *242 pose to the Clerk of the proper Court, it “ shall take effect and be valid as to all the subsequent purchasers for valuable consideration without notice, and as to all creditors, from the time when such deed of trust shall have been so acknowledged, proved or certified, and delivered to the Clerk.” Such is the substance of the recording law, for the purposes of this case.
Now the allegation is, that the trust-deed, involved in this case, was not recorded according to law, and the argument deduced from it is, that it is void between the parties, that is, Swanson and his trustee. For the moment conceding that it has not been duly recorded, what word or provision is there in the registry Act cited, which will bear the interpretation that the paper is void absolutely 1 The object of the 12th section is to fix a time at and from which the deed shall have validity against two classes of persons, to wit: “ subsequent purchasers for valuable consideration without notice,” and “ all creditors.” So far as the registry law is brought to our notice, it is only to be inferred that prior to such time a trust-deed would be void even as against such persons. It may be fairly implied, if implication is required, that as a time is fixed at which the instrument shall be valid in regard to the persons described, it shall not be efficacious prior to that period as to them. But suppose there be no such persons to impute invalidity, who else shall complain 1 Suppose such a deed made and well founded, as to every thing else but its registry; should the distributees (for example) of the party executing it, be heard to impute the want of recording as fatal to the legal right of the trustee ? If so, then conceive that the defendant, in this case, being no creditor in any sense, should, as tart feaser, have seized the Tobacco in controversy, and the trustee (Mitchell) should have brought his action in trover, detinue, or other proper form, the argument urged here for the defendant, would, in the case supposed, equally protect him — for that argument would be, as it is, — . the deed through which only the plaintiff can claim is void, and hence he fails to establish title.
Then there are only certain persons who may successfully attack such a deed as we are considering. If the defendant can, it must be only as creditor — he assumes no other character. To invest him with this right, what sort of creditor must he be ? To some of us, at any rate, it seems very reasonable to hold that he must be a creditor subsequent to the date of the deed. Certainly the one who complains as purchaser must be subsequent to the date of the deed, and before it is recorded or delivered for registry. He cannot complain if he buys after registry — the case could not arise if he bought before the deed was made. Now wherefore shall a subsisting creditor, at the date of the deed, be allowed to impute a *243 want of recording ? How has such omission to register affected him ? If he can maintain a successful war upon such a deed, it- surely must be waged on some other ground than want of recording. If the goods, transferred by the deed, had been delivered to the creditors who are to be benefited by its provisions, or to the trustee who is made their agent, the creditor now before us could not attack the preference upon any thing in the registry law. It does not appear to some of us what more he can find in that law to aid him, as a subsisting creditor, under the circumstances actually surrounding the case. In the exigency of a removal of the goods from the county where the deed is first recorded, to another, by virtue of the terms used in the last clause of the 11th section, the deed would be good not only as between the parties but as to all the world, subsequent creditors and purchasers included, without recording in the other county, fol-ia months; and there, too, it seems inevitable that the creditors and purchasers meant must be subsequent, that is to the first recording, though the word subsequent is not used as to either. The language properly interpreted seems to be, thus: after due registry of the deed, subsequent purchasers and creditors shall not resist it, but until then it shall be no barrier to subsequent purchasers and creditors — that is, subsequent to the date of the deed.
Probably, however, it may be considered hazardous to rely upon a view not presented at the bar, nor (so far as we are apprised) suggested by certain counsellors of the State of Virginia, examined in this cause. Then let us inquire whether it is not a mistake to assume that the deed has not, in fact, been recorded as the law prescribed.
Let it be remembered that, as the evidence imports, Swanson sent the Tobacco, in question, to defendant in the latter part of September, that is, to Lynchburg. The same Tobacco reached Richmond about the 1st of October, to be thence shipped to Charleston, and by Rail Road forwarded to Augusta, to certain persons named. On the 2d Oct. Swanson informed Gould & Bulkley, who were to receive 20 boxes of the Tobacco, that he had sent to them some very prime, referring, it is not questioned, to the Tobacco aforesaid ; and he wished a check on New York for $300, which he obtained, whether as an advance upon the said Tobacco, or on another lot referred to by him, and offered on sale to Gould & Bulkley, does not appear with certainty — it was probably an advancement on account. It results from this that the Tobacco, here in contest, was, when the deed was made, not stationary, that it did not “ remain” (which is the word-in the registry Act,) in any county in Virginia, and was not intended to be stationary, or so to remain — it was in fact, and was contemplated to be, in transitu. It was shipped on the 6th *244 Oct. four days after the date of the deed, from Richmond, and three days prior to the recording of the deed in Rich'"’mond. Now then, allowing the registry Act to be'applicable to a commodity, an article of commerce, in such a condition of progressive motion towards a market beyond Virginia, and that the word “remain” means “ is in other words, the recording is required to be made where the property is at the time of registry, where was this Tobacco, in legal contemplation, on the 3d of Oct. when the deed was recorded in the county of Swanson’s residence? Several members of the Court consider it to have then been, in the eye of law, at the owner’s place of residence, since it could not, in legal view, be said to exist, be, or remain, in any particular county in Virginia, and therefore attended the person of the owner, according to the general presumption of law, implying that idea touching personal property. If this doctrine be substantial, the question is decided ; for then the deed was duly recorded, and the only objection to the right of Mitchell ceases.
Dargan v. Richardson, Cheyes, 197.
Again, if the parties to the deed designed that it should not be executed in Virginia, but elsewhere, so far as the 40 boxes of Tobacco were concerned, then the lex loci contrac-tus would not govern; and if circumstances drove the parties to the execution of the deed in our jurisdiction, (as they have done,) what law can apply to its construction, or affect its validity, except our own ? It requires no argument to shew that, according to our law, the right of Mitchell, under such a transfer, would be perfect against the lien of an attachment, subsequent to the date of the instrument of transfer. We have decided that a letter transferring notes, though not received, will fix the rights of the assignee so as to take precedence to the lien of an attachment levied after the date of the letter of assignment, but before it was received and accepted by the assignee. If it be insisted that the contract or transfer was understood to have been made with reference to, and to be carried into effect in pursuance of, the law of Georgia, and that such law rendered the transaction void, (which indeed was argued before us,) then it may well be replied that the defendant himself prevented the commodity from reaching a place where the law of Georgia could apply, and he has forced this question into our forum by his own voluntary act. It is, however, by no means intended to affirm or admit that if we were constrained to import the statute of Georgia into this case, it would, in any wise, profit the defendant. Vfe do not perceive the occasion to rule any thing upon the subject.
There is yet another consideration which has entered into our investigation of this subject. It is this : according to our interpretation of our own registry laws, actual notice is equivalent to recording. Now, in the absence of any contrary *245 evidence, we should naturally conclude the same rule would prevail in Virginia. The proof is, that as early as the 5th day of Oct. the defendant had notice of the deed of trust.— It was on the 20th of the same month he caused his attachment to be levied on the Tobacco. This was his first lien, for he had none in Virginia, so far as he has shewn. With such actual notice of the trustee’s title, how can the defendant transpose the position of the parties, and drive the trustee behind him? Suppose he had bought the Tobacco from Swanson, or another, in derogation of the trustee’s title, could he stand up in our Courts, and shelter himself under the presumed ignorance of the claim arising from the want of recording ?
In every aspect of the case, it must be remembered that the only objection to the deed of trust urged by the defendant, is that it has not been duly recorded, and for that reason, and not for any fraud or other illegality, is void.
Probably every member of the Court would not, with equal clearness and confidence, insist upon each of the views herein before presented, as interposing an obstacle to the defendant’s claim. Each, however, has had its weight, and combined together they have served to conduct the Court to the conclusion, unanimously, that the verdict on circuit ought not to be disturbed, and that the motion ought to be dismissed.
The whole Court concurred.

Motion refused.